# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| Gail Downing, | ) | |
| | ) | **Case No. 3:22-cv-00447** |
| Plaintiff, | ) | |
| | ) | **JUDGE CAMPBELL** |
| v. | ) | **MAGISTRATE JUDGE** |
| | ) | **HOLMES** |
| AstraZeneca Pharmaceuticals LP, | ) | |
| | ) | **JURY DEMAND** |
| Defendant. | ) | |

## GAIL DOWNING'S RESPONSE IN OPPOSITION TO ASTRAZENECA PHARMACEUTICALS LP'S MOTION FOR SUMMARY JUDGMENT

Comes now Gail Downing, by and through counsel, and submits this Memorandum of Law in Opposition to Defendant AstraZeneca Pharmaceuticals LP's Motion for Summary Judgment.[1]

## INTRODUCTION AND SUMMARY OF ARGUMENT

By claiming that "there is no legal or factual basis to support Plaintiff's claim that AstraZeneca terminated her **because of** her age or **solely** for refusing to remain silent about illegal activities,"[2] AstraZeneca Pharmaceuticals LP (hereinafter "AstraZeneca") has offered the Court only inadmissible hearsay evidence of its claimed nondiscriminatory reasons for terminating Gail Downing's (hereinafter "Downing") employment. The notion that the Court should consider hearsay statements and inadmissible evidence, is not consistent with the Federal standard and interpretive caselaw regarding the Court's role in considering a motion for summary judgment. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994). As addressed below, AstraZeneca has failed to meet its burden under Fed. R. Civ. P. 56 and there is substantial proof that will lead the

---

[1] Document Number (D.N.) 39.
[2] D.N. 39, PageID #: 327.

finder of fact to conclude that Downing was discriminated against because of her age and terminated for refusing to remain silent about illegal activities.

## FACTS

Downing was hired by AstraZeneca's predecessor company, Bristol Myers Squibb ("BMS"), with a start date of July 29, 1994 (D.N. 15, Am. Compl., PageID#: 65; D.N. 40-1, Downing Dep., PageID#: 382). BMS sold their diabetes division to AstraZeneca and Downing's employment continued with AstraZeneca effective February 1, 2014. (D.N. 15, Am. Compl., PageID#: 65; D.N. 40-1, Downing Dep., PageID#: 382).

During her employment with BMS and AstraZeneca, Downing was promoted from a sales representative to District Manager, Senior District Manager, and Executive Manager. (D.N. 15, Am. Compl., PageID#: 65; D.N. 40-1, Downing Dep., PageID#: 383-84). Downing's performance throughout her tenure with AstraZeneca was excellent. As Executive District Manager, Downing placed in the top 5% of sales and received numerous leadership awards based upon the performance of her region. (D.N. 15, Am. Compl., PageID#: 65). Downing also served as Interim Regional Manager for six months beginning in mid-2017 until Fran Bellefeuille took over in January 2018. (D.N. 15, Am. Compl., PageID#: 65; D.N. 40-1, Downing Dep., PageID#: 386-88).

On May 27, 2021, Downing received a report from one of the AstraZeneca's sale representatives on her team, Sharon McGraw, that Jennifer Page, another of AstraZeneca's sales representatives on Downing's team, possessed and shared a photograph of the penis of a minor male (hereinafter referred to as "J.D."). (D.N. 15, Am. Compl., PageID#: 65-66; D.N. 40-1, Downing Dep., PageID#: 447). It was reported by Sharon McGraw, that Jennifer Page shared this photograph with a provider named Brandi Biederman in the presence of another witness during a

company sales visit for AstraZeneca. (D.N. 15, Am. Compl., PageID#: 66; D.N. 40-1, Downing Dep., PageID#: 447).

Sharon McGraw also reported to Downing an incident that Ms. Page was involved in with another prover, Dr. Carlson, where Ms. Page was arguing loudly with Dr. Carlson's office manager who requested that Ms. Page stop shouting or leave the premises. (D.N. 15, Am. Comp., PageID#: 66; D.N. 40-1, Downing Dep., PageID#: 456). Downing, pursuant to AstraZeneca's policies and procedures, immediately reported Ms. Page's inappropriate behavior to AstraZeneca through the HR department and to Mr. Bellefeulle, the current Regional Manager. (D.N. 15, Am. Comp., PageID#: 66; D.N. 40-1, Downing Dep., PageID#: 449).

On April 14, 2021, Ms. Page had visited with Downing and informed Downing that Ms. Page's husband had left her. (D.N. 15, Am. Compl., PageID#: 66; D.N. 40-1, Downing Dep., PageID#: 444). Downing suggested that Ms. Page seek help and asked if she needed time off from work. Ms. Page went on short term disability on May 28, 2021. (D.N. 15, Am. Comp., PageID#: 66; D.N. 40-1, Downing Dep., PageID#: 451). While Ms. Page was on short term disability, Downing was informed by Brice Roberts, Ms. Page's fellow sales representative, that Ms. Page had an inappropriate relationship with minor male J.D. (D.N. 15, Am. Comp., PageID#: 66; D.N. 40-1, Exh. A[3], Roberts Dep., 44:7-46:11, Aug. 23,2023).

The incidents Downing reported regarding Ms. Page were violations of AstraZeneca's polices including the "Standards of Conduct." (D.N. 15, Am. Comp., PageID#: 67; Exh. B, Standards of Conduct). Defendant's "Global Code of Conduct" outlines expectations for conduct and work practices and states that it is a violation subject to disciplinary action for:

---

[3] Unless otherwise noted herein, all citations to exhibits referenced in this Response refer to exhibits attached to Gail Downing's Response in Opposition to AstraZeneca Pharmaceuticals LP's Motion for Summary Judgment and the Exhibits filed by the Defendant in conjunction with their Motion for Summary Judgment and referenced in the Statement of Undisputed Material Facts.

a. Failing to report incidents of non-compliance;
b. Failing to cooperate in investigations of non-compliance; and
c. Retaliating against anyone for reporting or cooperating in investigations of non-compliance.

(D.N. 15, Am. Comp., PageID#: 67; Exh. B, Standards of Conduct).

AstraZeneca HR employee Kim Barrow was assigned to investigate the reported incidents involving Ms. Page. (D.N. 15, Am. Comp., PageID#: 67; D.N. 40-2, Barrow Dep., PageID#: 640). Ms. Barrow contacted Downing on or about June 7, 2021, to gather additional information and asked Downing to contact Brandi Biederman and ask for written confirmation of what Ms. Page had shared with her. (D.N. 15, Am. Comp., PageID#: 67; D.N. 40-2, Barrow Dep., PageID#:641). Ms. Barrow informed Downing that AstraZeneca would need to interview representatives Sharon McGraw, Brice Roberts, and Stacey Colvin. (D.N. 15, Am. Comp., PageID#: 67; D.N. 40-1, Downing Dep., PageID#: 453). Downing notified the three representatives that they would be contacted by Ms. Barrow and requested that they cooperate in the investigation as required by AstraZeneca's Code of Conduct. (D.N. 15, Am. Comp., PageID#: 67; D.N. 40-1, Downing Dep., PageID#: 453).

Brice Roberts contacted Ms. Page while she was on leave and informed Ms. Page of the AstraZeneca investigation involving her inappropriate behavior. (D.N. 15, Am. Comp., PageID#: 68; Exh. A, Roberts Dep. 55:4-8, Aug. 23, 2023). Mr. Roberts contacted Ms. Page before Downing ever mentioned anything to him about an HR investigation. (Exh. A, Roberts Dep. 54:14-55:19, Aug. 23, 2023).

Ms. Barrow interviewed the three sales representatives, Sharon McGraw, Brice Roberts, and Stacey Colvin. (D.N. 15, Am. Comp., PageID#: 68; D.N. 40-2, Barrow Dep., PageID#: 664, 708). Accordingly, Mr. Roberts informed Ms. Barrow that Ms. Page had shared information regarding her inappropriate behavior with minor male J.D., going further to say that Ms. Page's

husband had discovered her and J.D. in an inappropriate act. (D.N. 15, Am. Comp., PageID#: 68; Exh. A, Roberts Dep., 57:23-59:24, Aug. 23, 2023). AstraZeneca never interviewed Biederman, and ultimately determined that the allegations against Ms. Page could not be substantiated, despite concluding that some reference to the picture of an underaged boy's genitals occurred. (D.N. 40-2, Barrow Dep., PageID#: 651-52).

In June/July 2021, Downing reached out to Ms. Barrow regarding the status of the investigation and was told it was "on hold" while Ms. Page was on leave. (D.N. 15, Am. Comp., PageID#: 68; D.N. 40-1, Downing Dep., PageID#: 453-454).

On August 25, 2021, Ms. Page returned to work and began making retaliatory allegations against Downing, Mr. Roberts, and Ms. Colvin. (D.N. 15, Am. Comp., PageID#: 68; D.N. 40-2, Barrow Dep., PageID#: 714-718). In response to Ms. Page's allegations against Downing, AstraZeneca conducted numerous interviews with the seven sales representatives that work under Downing. (D.N. 15, Am. Comp., PageID#: 68; D.N. 40-4, Davis Dep., PageID#: 815; D.N. 40-6, Pomponi Dep., PageID#: 867). Three of the sale representatives (Mr. Roberts, Ms. Colvin, and Ms. McGraw) and Downing raised concerns about retaliation by Ms. Page. (D.N. 40-6, Pomponi Dep., PageID#: 887, 891, 898; D.N. 40-4, Davis Dep., PageID#: 812). However, no action was taken against Ms. Page. (D.N. 40-4, Davis Dep., PageID#: 887).

On November 30, 2021, Downing was interviewed via Microsoft Teams by Michael Pomponi, Senior Assurance Partner, and Joshua Davis, Senior Employee Relations Partner, regarding the retaliatory allegations made by Ms. Page. (D.N. 15, Am. Comp., PageID#: 69; D.N. 40-4, Davis Dep., PageID#: 816-817). On this day, Downing was traveling as part of her job duties to conduct supervisory visits, and participated in the Teams call while pulled over in her vehicle. (D.N. 15, Am. Comp., PageID#: 69; D.N. 40-1, Downing Dep., 491). After approximately fifty

minutes, Downing's screen froze and she lost the connection to the Teams call and had to reconnect at another exit. (D.N. 15, Am. Comp., PageID#: 69; D.N. 40-4, Davis Dep., PageID#: 820; D.N. 40-6, Pomponi Dep., PageID#: 919).The November 30, 2021 Teams call was hostile and accusatory towards Downing. (D.N. 15, Am. Comp., PageID#: 69; D.N. 40-1, Downing Dep., PageID#: 493). Downing was accused of deliberately disconnecting from Teams and of having another individual in the vehicle with her during the call. (D.N. 15, Am. Comp., PageID#: 69; D.N. 40-1, Downing Dep. PageID#: 126). Both accusations were untrue. (D.N. 15, Am. Comp., PageID#: 69; D.N. 40-4, Davis Dep., PageID#: 824).

On December 6, 2021, Downing was terminated for alleged violations of the Code of Ethics and compliance. (D.N. 15, Am. Comp., PageID#: 69; Exh. C, Downing Disciplinary Record). AstraZeneca relies on four pretextual reasons for terminating Downing: obtaining Byduero ("BCISE") samples for her personal use; breaching confidentiality during an HR investigation; showing her breast to a subordinate; and, discouraging employees from reporting potential concerns to HR. (D.N. 39, Memo. in Support of Mot. for Sum. Judg., PageID: 327).

The first reason stems from a series of innocuous texts and two emails between Downing and Dr. Jill Boyle, a provider and friend of Downing, regarding a sample of BCISE. (D.N. 15, Am. Comp., PageID#: 69; D.N. 40-1, Downing Dep., PageID#: 491; D.N. 40-6, Pomponi Dep., PageID#: 916). However, AstraZeneca never interviewed Dr. Boyle, despite Dr. Boyle offering to speak with AstraZeneca and provide a written statement refuting the allegations. (D.N. 15, Am. Comp., PageID#: 69; D.N. 40-6, Pomponi Dep., PageID#: 920). Instead, Mr. Pomponi and Mr. Davis concluded that Downing was not a "credible witness" and therefore found Downing to have been "guilty" of a compliance violation. (D.N. 15, Am. Comp., PageID#: 69; D.N. 40-6, Pomponi Dep., PageID#: 921).

The second reason arose from a phone call Ms. Page received from her colleague Brice Roberts who informed Ms. Page of the ongoing HR investigation involving her. (D.N. 40-4, Davis Dep., PageID#: 831). As discussed above, Downing was informed by Ms. Barrow during her first interview that AstraZeneca would need to interview representatives Sharon McGraw, Brice Roberts, and Stacey Colvin. (D.N. 15, Am. Comp., PageID#: 67; D.N. 40-1, Downing Dep., PageID#: 453). Downing notified the three representatives only that they would be contacted by Ms. Barrow and requested that they cooperate in the investigation as required by AstraZeneca's Code of Conduct. (D.N. 15, Am. Comp., PageID#: 67; D.N. 40-1, Downing Dep., PageID#: 453). This was confirmed by Brice Roberts, Stacy Colvin, and Sharon McGraw. (D.N. 40-4, Davis Dep., PageID#: 831). Brice Roberts confirmed in his interview with AstraZeneca that he learned of the specifics of the HR investigation from Sharon McGraw and that "Gail only shared that HR would be reaching out to me." (D.N. 40-4, Davis Dep., PageID#: 831; Exh. A, Roberts Dep. 39:3-19, Aug. 23, 2023). However, AstraZeneca, chose to not believe Mr. Roberts or Downing and substantiated the allegation. (D.N. 40-4, Davis Dep., PageID#: 783-84).

The third reason arose from Ms. Page accusing Downing of showing her breast surgery site. (D.N. 15, Am. Comp., PageID#: 69-70; D.N. 40-4, Davis Dep., PageID#: 808). Downing had obtained a surgical repair after two prior surgeries for cancer. (D.N. 15, Am. Comp., PageID#: 70; D.N. 40-1, Downing Dep., PageID#: 482). Ms. Page had requested on numerous occasions to see Downing's surgical site. (D.N. 15, Am. Comp., PageID#: 70; D.N. 40-1, Downing Dep., PageID#: 482-83). Downing honored Ms. Page's numerous requests only because of Ms. Page's insistence and because Ms. Page stated that she was mulling over the prospect of having a breast augmentation surgery. (D.N. 15, Am. Comp., PageID#: 70; D.N. 40-1, Downing Dep., PageID#: 482-83). This instance occurred approximately two years prior to Ms. Page reporting it to

AstraZeneca, and she only reported it after she was being investigated following Downing's report to AstraZeneca regarding Ms. Page. (D.N. 15, Am. Comp., PageID#: 70; D.N. 40-4, Davis Dep., PageID#: 808-09).

The fourth reason stems from an allegation that Downing encouraged a new hire, Emily Bauguss, not to report non-compliance issues to HR. (D.N. 15, Am. Comp., PageID#: 70; D.N. 40-4, Davis Dep., PageID#: 802). Although Ms. Bauguss was interviewed twice by AstraZeneca, she was only generally asked about samples, field rides, and non-complaint conversations. (D.N. 15, Am. Comp., PageID#: 70; D.N. 40-4, Davis Dep., PageID#: 802-805). Ms. Bauguss was never asked about the allegation that Downing encouraged her not to report non-compliance to HR, and only generally discussed a conversation that centered around trust. (D.N. 15, Am. Comp., PageID#: 70; D.N. 40-4, Davis Dep., PageID#: 805; D.N. 40-7, Bauguss Dep., PageID#: 983-84).

Prior to her termination on December 6, 2021, Downing had not received any prior disciplinary actions throughout her tenure with AstraZeneca. (D.N. 15, Am. Comp., PageID#: 70; D.N. 40-4, Davis Dep., PageID#: 791). Downing is a female and was 63 years old at the time of her termination. (D.N. 15, Am. Comp., PageID#: 70; D.N. 40-1, Downing Dep., PageID#: 378). Downing was a highly compensated employee and one of AstraZeneca's most highly compensated female managers after her 27 years of combined services. (D.N. 15, Am. Comp., PageID#: 70; D.N. 40-1, Downing Dep., PageID#: 532-33). Leadership for AstraZeneca had previously made comments relating to there being "too many older people in AstraZeneca" and a need for "younger people." (D.N. 40-1, Downing Dep., PageID#: 533). This admonition that AstraZeneca's workforce was too old and they needed to bring their average employee age closer to 30 was made by Mike Hartman AstraZeneca's U.S. Director of Sales in a March 2021 nationwide sales presentation which is also the subject of an ADEA and Title VII lawsuit in the U.S. District Court

of Delaware, *Wilhoit et al v. AstraZeneca Pharmaceuticals, LP*, Case No. 22-cv-01634-GBW-SRF (D. Del. 2022), D.N. 19, First Am. Class and Collective Action Compl., PageID#: 249-250.

As a result of being abruptly terminated on December 6, 2021, Downing was deprived of:

a) her Q3 and Q4 bonuses;

b) Her Q3 FSIP (despite Q3 ending in June); and

c) stock awards with AstraZeneca that she previously earned were prohibited from vesting. (D.N. 15, Am. Comp., PageID#: 70-71; D.N. 40-1, Downing Dep., PageID#: 523-527). AstraZeneca matched fourteen percent of Downing's total annual income, inclusive of salary and bonuses, in retirement funds into a 401k plan. (D.N. 15, Am. Comp., PageID#: 71; D.N. 40-1, Downing Dep., PageID#: 525). Downing had two years of stocks awarded to her by AstraZeneca, which are still outstanding, meaning that the remaining stock in Downing's account could only be vested in March 2022 and March 2023, respectively. (D.N. 15, Am. Comp., PageID#: 71; D.N. 40-1, Downing Dep., PageID#: 523-527). These amounts were taken away with Downing's termination. (D.N. 15, Am. Comp., PageID#: 71; D.N. 40-1, Downing Dep., PageID#: 523-527). The stock award amount represented six percent of Downing's annual salary and was given to select employees AstraZeneca wanted to retain. (D.N. 15, Am. Comp., PageID#: 71; D.N. 40-1, Downing Dep., PageID#: 523-527). The stock could not be cashed out in full until three years had passed from the time it was awarded. (D.N. 15, Am. Comp., PageID#: 71; D.N. 40-1, Downing Dep., PageID#: 523-527).

In addition to the above issues, Downing lost her life insurance, access to the company car, husband's health insurance coverage, life insurance, and when Downing reaches the age of 65, she will likewise be deprived of her health benefits. (D.N. 15, Am. Comp., PageID#: 71; D.N. 40-1, Downing Dep, PageID#: 523-527).

Despite multiple substantiated violations of Defendant's policies, including anti-harassment under Title VII, by Ms. Page—who is significantly younger than Downing—was not terminated by AstraZeneca. (D.N. 15, Am. Comp., PageID#: 71; D.N. 40-2, Barrow Dep., PageID#: 726-27). Ms. Page only received a written warning and is still employed by AstraZeneca. (D.N. 40-4, Davis Dep., PageID#: 800; Exh. A, Roberts Dep. 26:19-10). Fran Bellefeuille made the disciplinary decisions in both investigations. (D.N. 40-2, Barrow Dep., PageID#: 727; D.N. 39, Memo. in Support of Mot. for Sum. Judg., PageID#: 340; D.N. 40-1, Downing Dep., PageID#: 542). However, Mr. Bellefeuille also wanted to terminate Ms. Page and provide a "package" and was told that he could not do so by HR. (D.N. 40-2, Barrow Dep., PageID#: 696-97). Mr. Bellefeuille was certainly not able to terminate Downing without the consent of HR. (D.N. 40-2, Barrow Dep., PageID#: 727).

## LAW AND ARGUMENT

### I.    ASTRAZENECA'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED AS IT HAS NOT MET ITS BURDEN UNDER FED. R. CIV. P. 56 AND THERE ARE DISPUTED ISSUES OF FACT.

A party is entitled to summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the disputed about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To prevail, the movant must prove the absence of a genuine issue of material fact as to any essential element of the opposing party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The party moving for summary judgment has the initial burden of identifying and citing specific portions of the record—including, inter alia, depositions, documents, affidavits, or

declarations—that it believes demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018).

In considering a motion for summary judgment the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). At the summary judgment stage, the court's role is to "determine whether there is a genuine issue for trial," not to weigh the evidence and determine the truth of the matter asserted. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

In simple terms, AstraZeneca contends that it is entitled to summary judgment on the basis that there is not "a shred of evidence" that AstraZeneca terminated Downing because of her age or because she reported illegal activity involving Jennifer Page.[4] However, AstraZeneca offers no admissible proof to rebut Downing's prima facie case of Age Discrimination nor violation of the Tennessee Public Protection Act (TPPA), including no evidence to support that it terminated Downing's employment for a legitimate, non-discriminatory reason. Instead, AstraZeneca relies only on numerous hearsay statements to claim there is not "a shred of evidence" to support the Plaintiff's claims.

## II. VIOLATIONS OF THE TENNESSEE HUMAN RIGHTS ACT T.C.A. §§ 4-21-101, ET. SEQ.

"It is a discriminatory practice for an employer to … discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of

---

[4] D.N. 39, PageID #: 346.

employment because of such individual's … age." Tenn. Code Ann. §4-21-401(a)(1). Traditionally, an employee asserting a claim under the Tennessee Human Rights Act (THRA) bore the burden of showing that their age was "a determining factor" in the adverse employment decision. *Flynn v. Shoney's Inc.*, 850 S.W.2d 458, 460 (Tenn. Ct. App. 1992). AstraZeneca asserts that "Federal Courts assess age-based claims under the THRA using the same analytical framework as ADEA claims." (D.N. 39, Memo. in Support of Mot. for Sum. Judg., PageID #: 337.) However, in the wake of *Gross*, no Tennessee court has explicitly addressed the causation standard for an age discrimination claim brought under the THRA. *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 n.2 (6th Cir. 2014).[5] Since *Gross*, Tennessee Courts have continued to state, an employee bears the burden of proving "that considerations of age not only played a role in but determinatively influenced the employer's decision." *Williams v. Greater Chattanooga Pub. Television Corp.*, 346 S.W.3d 501, 509 (Tenn. Ct. App. 2011).[6]

Accordingly, a plaintiff must prove that: "(1) [s]he was a member of the protected class; (2)[s]he was subjected to an adverse employment action; (3)[s]he was qualified for the position; and (4) [s]he was replaced by a younger person." *Brenner v. Textron Aerostructures*, 874 S.W.2d 579, 584 (Tenn. Ct. App. 1993). If the plaintiff establishes a prima facie case, then the defendant must proffer a legitimate, nondiscriminatory reason for its actions. *Frye v. St. Thomas Health Servs.*, 227 S.W.3d 595, 610 (Tenn. Ct. App. 2007). If the defendant does so, "the plaintiff must

---

[5] The case AstraZeneca cites, *Pierson*, clearly states that historically the Tennessee Supreme Court evaluated THRA claims in the same way as claims brought under federal statutes. However, the Sixth Circuit acknowledges that "it is by no means certain that the Tennessee Supreme Court would choose to adopt the Gross standard; in other contexts, Tennessee Courts have chosen to deviate from heightened federal causation standards for claims brought under the THRA." *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 n.2 (6th Cir. 2014); *see Sykes v. Chattanooga Hous. Auth.*, 343 S.W.3d 18, 29 (Tenn. 2011).
[6] *See also Wallace v. City of Lewisburg*, No. M2019-01690-COA-R3-CV, 2020 Tenn. App. LEXIS 485 (Tenn. Ct. App. Oct. 3, 2020).

rebut this with evidence that the asserted nondiscriminatory reason is mere pretext for discrimination." *Id.*

      *a.* *Downing has established a prima facie case of a violation under the Tennessee Human Rights Act.*

As discussed above, Downing has the burden of proving that (1) she was over the age of 40; (2) she was subjected to an "adverse employment action;" (3) she was qualified; and (4) she was replaced by a younger person. *Brenner*, 874 S.W.2d at 548. The Tennessee Supreme Court has provided a non-exhaustive list of adverse employment actions which includes termination of employment. *Barnes v. Goodyear Tire and Rubber Co.*, 48 S.W.3d 698, 707 (Tenn. 2000). The fourth element, as with the Federal statute, may be satisfied by a showing that the plaintiff was treated less favorably than a "similarly situated younger employee." *Bundy v. First Tenn. Bank Nat'l Ass'n*, 266 S.W.3d 410, 417 (Tenn. Ct. App. 2007).

It is undisputed that Downing satisfies the first three elements required to establish a prima facie case.[7] AstraZeneca asserts that "Downing will attempt to support her claims against AstraZeneca by pointing to Page… However, Page is not a comparator to Plaintiff."[8] As Tennessee courts have recognized, "the plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment … rather … the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the relevant aspects.'" *Hartman v. Tenn. Bd. of Regents*, No. M2010-02084-COA-R3-CV, 2011 Tenn. App. LEXIS 479, at *22 (Tenn. Ct. App. Aug. 31, 2011).

Although Ms. Page was under investigation at the same time as Downing, there were many inconsistencies between the investigations into Ms. Page and Downing's behavior. AstraZeneca

---

[7] D.N. 39, PageID #: 338.
[8] D.N. 39, PageID#: 338.

ultimately terminated Downing, while only giving Ms. Page a written warning. Ms. Page is still employed by AstraZeneca. Specifically, despite Dr. Boyle's numerous offers to speak with AstraZeneca to refute the allegations against Downing, AstraZeneca decided not to speak with Dr. Boyle and found Downing was not a "credible witness" and substantiated the allegations against Downing. Likewise, AstraZeneca never spoke to Ms. Biederman, but in contrast, determined that it could not substantiate the allegation that Ms. Page shared a photograph of a minor's genitals with Biederman.

AstraZeneca states that Ms. Page is dissimilar to Downing in many material ways, one of which purports to be that Ms. Page does not report to Francis Bellefeuille and Downing does. However, according to AstraZeneca, it was Francis Bellefeuille and HR who made the ultimate decision as to the disciplinary action taken against Ms. Page. Additionally, AstraZeneca has taken the position that Francis Bellefeuille made the ultimate decision as to the disciplinary action taken against Downing. Therefore, Page was similarly situated to Downing with regard to the purported decision-maker.

> b. *AstraZeneca has offered no admissible evidence of a legitimate, non-discriminatory reason.*

Once the plaintiff establishes a prima facie case, then the defendant must proffer a legitimate, nondiscriminatory reason for its actions. *Frye*, 227 S.W.3d at 610. This shifts the burden to the defendant to produce admissible evidence that "if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Templeton v. Macon Cty.*, 576 S.W.3d 691, 703 (Tenn. Ct. App. 2018) (citing *Wilson v. Rubin*, 104 S.W.3d 39, 50 (Tenn. Ct. App. 2002)). If the employer succeeds in carrying its burden of production, the presumption of discrimination drops and the trier of fact decides the ultimate

question of whether the employee has proved that the employer unlawfully discriminated against the employee. *Wilson*, 104 S.W.3d at 50.

AstraZeneca has only offered self-serving declarations which contain numerous levels of hearsay to support its "legitimate, non-discriminatory" reasons for terminating Downing. Therefore, AstraZeneca has not succeeded in rebutting the presumption of discrimination.

> ### c. Downing has proved AstraZeneca's proffered reason for termination were pretextual.

An employee may demonstrate than an employer's proffered, non-discriminatory reasons for an adverse employment action are pretextual by revealing the "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation. *Wilson*, 104 S.W.3d, at 50-51 (Tenn. Ct. App. 2002) (citing *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002)). Three of the most common ways to undermine an employer's proffered reasons include "(1) establishing that the proffered reasons have no basis in fact, (2) establishing that the proffered reasons did not actually motivate the adverse employment action, or (3) establishing that the proffered reasons were insufficient to motivate the adverse employment action." *Id.* at 51 (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000); *Cliff v. Board of Sch. Comm'rs of Indianapolis*, 42 F.3d 403, 412 (7th Cir. 1994)). In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. *Id.* "A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000).

As discussed above, AstraZeneca's proffered reasons have not been established by admissible evidence and are only supported by various levels of hearsay evidence. However, it has

also been established that AstraZeneca's proffered reasons have no basis in fact, as it refused to speak with individuals directly involved, *e.g.* Brandi Biederman and Jill Boyle, individuals who could have provided evidence that would have directly contradicted the Defendant's "credibility determinations" that they now cite as their reasons for Downing's termination. Additionally, it refused to believe its own employees on the issue of BCISE sampling and Mr. Roberts regarding the allegation that Downing breached confidentiality. The only allegation that is based in fact, to which Downing admitted, is showing her breast surgery scar to a subordinate, which AstraZeneca admits did not motivate her termination, as it occurred two years prior to being reported by Page and occurred because of Page's repeated requests. (Downing's Responses to Statement of Undisputed Material Facts filed in conjunction with this Memorandum, numbers 30, 34, 46, 51, 59, 68, 70, 71, 72, and 77).

### III.    VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT.

Similar to violations of the THRA, in cases where the plaintiff's ADEA claim is based principally on circumstantial evidence, the Sixth Circuit has employed the framework articulated in *McDonnell Douglas Corp.*[9] *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th 2009).  Pursuant to that framework, the plaintiff must first establish a prima facie case. *Id.* Under the ADEA, proof of a prima facie case requires a showing by a preponderance of the evidence (1) that the plaintiff was at least forty (40) years old at the time of the alleged discrimination, (2) that she was subjected to an adverse employment action, (3) that she was otherwise qualified for the position, and (4) that she was replaced by a younger worker. *Tuttle v. Metro. Gov't of Nashville and Davidson Cnty.*, 474 F.3d 307, 317 (6th Cir. 2007); *Rowan v. Lockheed Martin Energy Sys. Inc.*, 360 F.3d 544, 547 (6th Cir. 2004). The fourth element may be satisfied by showing that a similarly situation non-

---

[9] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

protected employee was treated more favorably. *Tuttle v. Metropolitan Government of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007). Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to present a legitimate, non-discriminatory reason for the plaintiff's termination. *See Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 142 (2000).

The defendant must "produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257 (1981). Once a defendant satisfies its burden, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason for terminating the plaintiff is merely pretextual. *Id.* "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B.Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000); *Tuttle*, 474 F.3d at 319 (quoting *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 529 (6th Cir. 2005)). The Sixth Circuit has held that "the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003).

To defeat a summary judgment motion in such circumstances, the "plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant … did not honestly believe in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001). The three-part test need not be applied rigidly. Rather, "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

As discussed above, Downing has established a prima facie case for age discrimination. Indeed, the "credibility determinations" against Downing (in her sixties at the time), when compared to the same "credibility determinations" made in favor of Page (twenty years younger than Downing) are inexplicable. None of the accusations made by Page, and used to terminate Downing, were supported by any person other than Page herself. Indeed, it is incredible that one of the proffered reasons for giving Page a written warning instead of termination based upon the substantiated violations against Page was that Page "admitted" her ethical violations and Downing did not. (Statement of Undisputed Material Facts 91, D.N. 40, PageID# 366). Indeed, Page denied at all times that she had any inappropriate pictures of a minor's genitalia or that she ever discussed having such pictures or any inappropriate relationship even though AstraZeneca substantiated that this was a false statement by Page through many other employees and providers. *Id.*

Further, as outlined above, AstraZeneca has offered no admissible evidence to support its proffered non-discriminatory reasons for terminating Downing. Even if AstraZeneca can offer admissible evidence to support its proffered reasons, Downing has provided substantial proof that the proffered reasons are merely pretextual and the decision to terminate Downing was essentially "pre-ordained" after she merely reported the allegations of ethical violations against Page. A finder of fact may reasonably reject AstraZeneca's explanation and find that AstraZeneca retaliated against and discriminated against Downing.

## IV.     VIOLATIONS OF THE TENNESSEE PUBLIC PROTECTION ACT

"No employee shall be discharge or terminated solely for refusing to participate in, or for refusing to remain silent about illegal activities." Tenn. Code Ann. § 50-1-304(b). Illegal activities has been defined by statute to mean "activities that are in violation of the criminal or civil code" of Tennessee or the United States. Tenn. Code Ann. § 50-1-304(a)(3)(A). To establish a claim for

relief under the TPPA, a plaintiff must prove: (1) she was an employee of the defendant; (2) she refused to remain silent or participate in illegal activity; (3) the defendant discharge or terminated the plaintiff's employment and; (4) an exclusive causal relationship between refusal to remain silent about illegal activities and the termination. *Franklin v. Swift Transp. Co.*, 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006). Similar to the THRA and the Federal claims, if an employee proves a prima facie case of retaliation, the employee creates a rebuttable presumption that the employer unlawfully retaliated against her. *Williams v. City of Burns*, 465 S.W.3d 96, 112-13 (Tenn. 2015).

As discussed above, Downing reported a fellow employee, Page, for possessing child pornography and showing it to others, as it was reported to Downing by another employee and a provider. It is unlawful in the State of Tennessee for an individual to knowingly possess material that includes a minor engaged in sexual activity or simulated sexual activity that is patently offensive. Tenn. Code Ann. § 39-17-1003(a). As a direct result of reporting Page's illegal activities, during her "Opportunity to Respond" to the allegations, Page made numerous allegations against Downing.

AstraZeneca appears to argue that Downing "cannot maintain two sole-cause claims in a single lawsuit." (D.N. 39, Memo. In support of Mot. For Sum. Judg., PageID#: 344). However, AstraZeneca does not cite any case law to support such an assertion. The Sixth Circuit has permitted the presentation of alternative or inconsistent theories to a jury if the claims are supported by evidence. *Foust v. Metro. Sec. Servs.*, 829 F.Supp.2d 614, 623 (E.D. Tenn. 2011)[10]; *See,* e.g., *Molecular Tech. Corp. v. Valentine*, 925 F.2d 910, 921 (6th Cir. 1991) (noting that "mutually exclusive claims are permissible provided the jury is adequately instructed on those alternate theories); *Sparton Tech., Inc. v. Util-Link, LLC*, 248 F.App'x 684, 690 (6th Cir. 2007).

---

[10] The court in *Foust* concluded that a plaintiff could proceed, at least at the summary judgment stage, with both an age-discrimination claim and a retaliation claim.

Downing was a highly compensated long-term employee of AstraZeneca. Downing had never been the subject of any complaint in her 27 years with AstraZeneca, a factor which AstraZeneca investigators reviewed and acknowledged. (D.N. 40-4, Davis Dep., PageID#: 791). However, shortly after bringing another employee's unethical and illegal activities to light, Downing became the subject of an investigation into numerous false allegations which were brought solely for the purpose of retaliating against Downing and several other employees who participated in the investigation into Page. As Joshua Davis acknowledged in his testimony, he recognized that it was very possible that Page brought forth the allegations in retaliation for what was being brought against her. (D.N. 40-4, Davis Dep., PageID#: 792-93). AstraZeneca's own investigators admitted that, under their own policies, supervisory status is not relevant when it comes to retaliation, retaliatory behavior is prohibited regardless of employee's status. (D.N. 40-4, Davis Dep., PageID#: 766).

As discussed above, the "legitimate" reasons offered by AstraZeneca for Downing's termination were not its true reasons, and were merely pretextual. The contradictions in their handling of the investigations of Page and Downing provide material evidence of the pretext of their reasons for Downing's termination and Page's "written warning."

## CONCLUSION

As stated above, and supported by Plaintiff's response to the Defendant's Statement of Undisputed Material Facts, Defendant has not met its burden under Fed. R. Civ. P. 56 to show that there exists no genuine dispute as to any material fact and that Defendant is entitled to judgment in its favor as a matter of law. Defendant's Motion should be denied.

Respectfully submitted,

_____

Rebecca W. Demaree (BPR No. 13994)
Peter C. Robison (BPR No. 27498)
Victoria L. Rohloff (BPR No. 40310)
211 Athens Way
Suite 200
Nashville, Tennessee 37228
(p) (615) 244-1440
(f)  (615) 254-9477
rwdemaree@cclawtn.com
pcrobison@cclawtn.com
vlrohloff@cclawtn.com


## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2023, a copy of the foregoing was filed and served electronically with the Court's CM/ECR system to the following:

Jennifer S. Rusie
Jackson Lewis PC
611 Commerce Street, suite 2803
Nashville, TN 37203
jennifer.rusie@jacksonlewis.com

*Attorney for AstraZeneca Pharmaceuticals, LP*

_____

Rebecca W. Demaree