# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| GAIL DOWNING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:22-cv-00447 |
| v. | ) |
| | ) JUDGE CAMPBELL |
| ASTRAZENECA | ) MAGISTRATE JUDGE |
| PHARMACEUTICALS LP, | ) HOLMES |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court is Defendant AstraZeneca Pharmaceuticals LP's ("AstraZeneca") Motion for Summary Judgment (Doc. No. 38). Plaintiff Gail Downing ("Downing") filed a response in opposition (Doc. No. 45) and AstraZeneca filed a reply (Doc. No. 48). For the reasons discussed below, AstraZeneca's motion will be **GRANTED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Downing began working for AstraZeneca in 2014. (Doc. No. 46 ¶ 2). AstraZeneca promoted Downing to Executive District Sales Manager when she was 57 years old. (Doc. No. 40-1 at PageID # 383, 386). Downing reported to Francis Bellefeuille and supervised pharmaceutical sales representatives throughout Tennessee and North Carolina. (Doc. No. 40-1 at PageID # 557). AstraZeneca's compliance manual states that employees must not "knowingly give samples to [health care professionals] for personal use (including for their family and friends), or take them for your personal use." (Doc. No. 40-1 at PageID # 620). AstraZeneca electronically allocates samples to sales representatives every month, and when a sales representative elects to provide a health care provider with a sample, the sales representative makes an electronic note and samples are mailed directly to the provider's office. (Doc. No. 40-1 at PageID # 470 – 474). District

Managers do not have physical samples to allocate to providers and can only reallocate samples electronically. (Doc. No. 40-1 at PageID # 474).

In June of 2021, Downing contacted AstraZeneca's Human Resources department to report misconduct by Jennifer Page, one of Downing's sales representatives, regarding an allegation that Page had shared a sexually explicit photograph of a minor with a health care provider. (Doc. No. 40-3 ¶ 3; Doc. 40-2 at PageID # 733).

In September of 2021, Page reported several instances of misconduct allegedly committed by Downing. (Doc. No. 40-2 at PageID # 737 – 739). Specifically, Page reported that Downing asked her team members to bring her samples of a drug sold by AstraZeneca, Bydureon ("BCISE"), for Downing's personal use; falsified field coaching reports; encouraged the team to use her son's bakery; breached confidentiality during an open Human Resources investigation; provided a marijuana gummy to a team member; showed Page her breast after augmentation surgery; and discouraged a team member from reporting any concerns to Human Resources. (*Id.*; Doc. No. 40-4 at PageID # 831- 834; Doc. No. 40-5 ¶ 5).

Joshua Davis, Senior Employee Relations Partner, led the investigation into the alleged Human Resources violations, including the breach of confidentiality, marijuana gummy, showing of Downing's breast, and discouraging comments related to Human Resources reporting. (*Id.*). Davis determined that Downing informed a team member of a Human Resources investigation into Page in violation of AstraZeneca's policy. (Doc. No. 40-4 at PageID # 832 – 833). Davis also determined that Downing showed her breast to Page and discouraged a team member from reporting potential concerns to Human Resources. (*Id.* at PageID # 833 – 834). Davis recommended a written warning for Downing as a result of the Human Resources investigation. (*Id.* at PageID # 834).

Michael Pomponi, Associate Director, Governance, conducted an investigation into the alleged Compliance violations against Downing, including the BCISE samples, field coaching report falsification, and conflict of interest regarding Downing's son's bakery. (Doc. No. 40-5 ¶ 5, Ex. A; Doc. No. 40-6 at PageID # 867). During the investigation, Page provided Pomponi with a text from Downing to Page and two other team members asking "can one of you or all of you please bring me some Bcise? Am down to my last one." (Doc. No. 40-1 at PageID # 621; Doc. No. 40-5 at PageID # 845). Page claimed that based on Downing's request, she asked one of her providers if she could take a BCISE sample from her office and gave the sample to Downing. (Doc. No. 40-5 ¶ 11, Ex. A). When Pomponi questioned Downing about the text, Downing informed him that she could not recall sending the text but that if she sent it, it would have been in reference to re-allocating samples amongst her team members. (Doc. No. 40-1 at PageID # 471 – 477; Doc. No. 40-5 at PageID 3 849).

During the Compliance investigation, Pomponi also learned about emails between Downing and a third party related to BCISE samples. (Doc. No. 40-1 at PageID # 495 – 508, 622 - 623; Doc. No. 40-5 ¶ 15, Ex. A). Specifically, Downing received an email on November 21, 2020, from Jill Boyle stating "I took the Bydureon a few minutes ago. Very easy to do. Crossing fingers that I tolerate it well and will let you know. If I experience less nausea that [sic] I have with Victoza, perhaps a second free sample before I ask for a script from my doctor?" (Doc. No. 40-1 at PageID # 623; Doc. No. 40-5 at PageID # 848). Downing responded, "I can easily give you 2-3 more BCISE to get you on your way to steady state and really think that you will tolerate it much better, hope so." (*Id.*). The next day, Downing received another email from Boyle stating "[t]hank you again for the free sample. So far I feel fine – not hungry this morning and barely any queasiness if at all!" (Doc. No. 40-1 at PageID # 622). When Pomponi questioned Downing about the emails,

3

Downing initially explained that Boyle got a BCISE prescription from Downing's husband, a retired anesthesiologist, and the free sample was a thirty-day free trial that Downing gave to her. (Doc. No. 40-5 at PageID # 850). Downing also stated that she "did not talk to [Boyle's] endocrinologist and speculated that maybe she got a BCISE sample from him." (*Id.*). Downing later provided a different explanation for the emails and stated that she had called Boyle's endocrinologist's office and asked the nurse to give Boyle a BCISE sample after Boyle complained of nausea after taking Victoza. (*Id.*) Pomponi determined that Downing was not honest during the interview based on her changing story and demeanor during the interview. (*Id.* ¶ 30). Based on the text message, emails, and interviews, Pomponi determined that Downing obtained BCISE samples for personal use in violation of AstraZeneca's policy. (*Id.* ¶ 31). Pomponi determined that the other compliance allegations against Downing were unsubstantiated. (*Id.* ¶ 34, Ex. A). Pomponi recommended termination of Downing's employment as the appropriate disciplinary sanction for Downing's Compliance violations. (Doc. No. 40-5 ¶¶ 31-33, Ex. A). Downing was terminated on December 6, 2021 (Doc. No. 40-2 at PageID # 743).

AstraZeneca issued Page a Written Warning for violation of the Code of Ethics and Drug Sample Manual for admitting to obtaining BCISE to provide Downing for personal use. (Doc. No. 40-4 at PageID # 885). AstraZeneca determined that Page acted at the direction of Downing and spoke candidly about obtaining BCISE samples for Downing for personal use. (Doc. No. 40-6 at PageID # 940; Doc. No. 40-5 ¶ 38).

On September 9, 2022, Downing filed an Amended Complaint against AstraZeneca asserting claims of age discrimination under the Age Discrimination in Employment Act ("ADEA"), age discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Tennessee Human Rights Act ("THRA"), retaliatory discharge, and violation

of the Tennessee Public Protection ("TPPA"). AstraZeneca filed a motion to dismiss, and the Court dismissed Downing's Title VII and retaliatory discharge claims. Accordingly, Downing's claims under the ADEA, THRA, and TPPA remain before the Court.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment movant has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III.     ANALYSIS

**A. Age Discrimination**

Downing brings age discrimination claims under the THRA and the ADEA.[1] A plaintiff may rely on either direct or circumstantial evidence to establish these claims. *See Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599 (6th Cir. 2019); *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Here, Downing relies on circumstantial evidence to support her claims. Accordingly, to determine whether summary judgment is appropriate, the court will "apply the three-part burden-shifting framework developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981)[.]" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775–76 (6th Cir. 2016).

Under this familiar burden-shifting framework, "the plaintiff bears the initial burden of establishing a *prima facie* case." *Id*. at 776. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "clearly set forth, through the introduction of admissible evidence, the reasons for the [adverse action]." *Burdine*, 450 U.S. at 255. "An articulation not admitted into evidence will not suffice." *Id*. at n.9. If the defendant meets its burden of production, the plaintiff must demonstrate that the proffered reason was not the true reason for the employment decision by persuading the court that a discriminatory reason more likely motivated the employer or by showing that the employer's proffered explanation is unworthy of credence. *See id*. at 256 (citing *McDonnell Douglas*, 411 U.S., at 804–805).

AstraZeneca, as the party bringing the summary judgment motion, has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that

---

[1]     Based on the allegations in the Complaint and the parties' briefing, it appears that Downing is not asserting a retaliation claim under the ADEA.

6

demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). AstraZeneca may satisfy its burden by presenting affirmative evidence that negates an element of Downing's claims or by demonstrating an absence of evidence to support her case. *See id.* Here, AstraZeneca argues Downing cannot establish all of the essential elements of her *prima facie* case or pretext. AstraZeneca attempts to satisfy its burden as the moving party by demonstrating an absence of evidence. The Court will address AstraZeneca's arguments in turn.

1. Prima Facie Case

To establish a prima facie case of age discrimination under the ADEA and THRA[2], Downing must show: "(1) she was over 40 years old; (2) she suffered an adverse employment action; (3) she was qualified for the position she held; and (4) she was either replaced by a person outside the protected class or treated differently than similarly-situated individuals." *Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446, 448 (6th Cir. 2018) (internal citation omitted).

Here, AstraZeneca challenges only the fourth element and contends that Downing cannot present evidence that she was replaced by someone outside of her protected class or treated less favorably than a similarly situated individual outside of her protected class. (Doc. No. 39 at PageID # 338). AstraZeneca argues that Page is not similarly situated to Downing because Page had a different job title, responsibilities, reporting hierarchy, and was Downing's subordinate. AstraZeneca also contends that Page only took the BCISE sample at Downing's direction and was open and honest during the interview process, whereas Downing allegedly changed her story multiple times when attempting to explain the text message and emails regarding the BCISE samples.

---

[2] "We assess age-discrimination claims brought under the THRA using the same analysis as those brought under the ADEA." *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014) (internal citation omitted).

7

Case 3:22-cv-00447   Document 55   Filed 08/07/24   Page 7 of 14 PageID #: 2269

In response, Downing argues that Page is similarly situated to her because the same individual, Francis Bellefeuille, made the ultimate decision as to the disciplinary action taken against Downing and Page. (Doc. No. 45 at PageID # 1049). There is ample evidence in the record that AstraZeneca determined that Downing and Page violated the same AstraZeneca policy prohibiting obtaining BCISE samples for personal use or to give to another person. (Doc. No. 40-1 at PageID # 626; Doc. No. 40-4 at PageID # 835).

Viewing the facts in the light most favorable to Downing, the Court finds that AstraZeneca has failed to meet its initial burden of showing an absence of evidence that Downing was treated differently than any similarly-situated individuals. Accordingly, Downing has established a prima facie case of age discrimination.

2. Legitimate, Nondiscriminatory Reason

"Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant, who must 'rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" *Levine v. DeJoy*, 64 F.4th 789, 797 (6th Cir. 2023) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). "In satisfying that burden, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons.' Instead, '[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Levine v. DeJoy*, 64 F.4th 789, 797 (6th Cir. 2023) (internal citations omitted).

Here, AstraZeneca must set forth, through the introduction of admissible evidence, the reasons for terminating Downing. AstraZeneca contends that it terminated Downing because it

determined that she obtained samples for personal use and gave them to someone else in violation of company policy. (Doc. No. 39 at PageID # 340, 342-343).

The Sixth Circuit has recognized that an employee's violation of company policy is a legitimate, non-discriminatory reason for termination. *Sokolnicki v. Cingular Wireless, LLC*, 331 F. App'x 362, 367 (6th Cir. 2009); *Chaves v. AT&T*, No. 3:13-CV-114-TAV-HBG, 2014 U.S. Dist. LEXIS 72252, at *13 (E.D. Tenn. May 28, 2014) (internal citation omitted) ("It is well established that an employee's violation of an employer's policy is a legitimate reason for termination."). As AstraZeneca has set forth a legitimate, nondiscriminatory reason for terminating Downing, the burden shifts back to Downing to demonstrate that this legitimate, nondiscriminatory reason was pretext. *See Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. at 248.

3. Pretext

An employee can show pretext "by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014) (internal citation omitted).

Downing contends that AstraZeneca's proffered reasons have not been established by admissible evidence and are supported by hearsay evidence. (Doc. No. 45 at PageID # 1051). However, "[t]he Sixth Circuit has held that investigative findings, including witness statements gathered by an employer during an internal investigation, are properly considered at summary judgment and do not constitute hearsay as long as the findings and statements are offered 'not to prove their truth but to demonstrate the state of mind and motive of Defendant's managers in discharging Plaintiff.'" *Fleming v. Sharp Mfg. Co. of Am.*, No. 11-2911-STA-DKV, 2013 WL 4432139, at *6 (W.D. Tenn. Aug. 16, 2013). Here, AstraZeneca has pointed to evidence in the

9

record that it relied on the findings of the Compliance and Human Resources investigations in making the decision to terminate Downing's employment. Accordingly, Downing's objection to the admissibility of the investigative findings is overruled.

Downing also argues that AstraZeneca's proffered reasons have no basis in fact because it refused to speak with individuals during its investigations that Downing alleges "could have provided evidence that would have directly contradicted [AstraZeneca's] 'credibility determinations' that they now cite as their reasons for Downing's termination." (*Id.*). However, AstraZeneca points to evidence that its findings in the Human Resources investigation determined that Downing violated company policies by informing team members that a Human Resources investigation was opened into Page, showing Page her breast augmentation, and discouraging a team member from reporting potential concerns to Human Resources. (Doc. No. 40-4 at PageID # 832 – 833; *Id.* at PageID # 833; (*Id.* at PageID # 833-834). AstraZeneca noted that during the Human Resources investigation, Downing "was not completely forthcoming and credible" and that the substantiated allegations "fall under a violation of the AZ Code of Ethics – Standards of Conduct which outlines acceptive workplace behaviors aimed at providing 'a great place to work where people feel respected, supported, and safe so that our diverse, uniquely talented employees are free to drive innovation.'" (*Id.* at PageID # 834).

Similarly, based on its findings in the Compliance investigation, AstraZeneca determined Downing violated its policy prohibiting knowingly giving samples to health care providers for personal use or taking them for personal use. (Doc. No. 40-5 at PageID # 853). In making this determination, AstraZeneca shows that it relied on Page's allegation that she personally obtained samples of BCISE and provided them to Downing at Downing's request and the text message from Downing to Page and two other team members requesting that they bring her a BCISE sample.

10

AstraZeneca points to evidence that it determined Downing's explanation of the text was inconsistent because Downing stated that the text was in reference to reallocating samples, even though AstraZeneca had an electronic system for sample reallocations and neither Downing nor team members carried physical samples. (*Id.* at PageID # 851). AstraZeneca determined that the text "clearly indicates [Downing] wanted physical samples of BCISE to be provided to her by [her team members]" and that "Downing's statement that the text was in reference to wanting to reallocate samples is not a plausible explanation." (*Id.* at PageID # 851).

AstraZeneca also points to emails between Downing and a third party, Jill Boyle, discussing BCISE samples. (*Id.* at PageID # 845, 848). AstraZeneca points to evidence that when asked about the emails, Downing initially stated that Boyle had gotten a prescription for the BCISE from Downing's husband, a retired physician, and that the sample referred to in the emails was a 30-day free trial that Downing gave her. (Doc. No. 40-5 at PageID # 850). AstraZeneca also points to evidence that when asked why Boyle asked for another free trial before asking for a prescription from her doctor, Downing stated that she did not talk to Boyle's doctor and speculated that Boyle got a BCISE sample from her doctor. (*Id.*). AstraZeneca also points to evidence that during the interview, Downing's screen froze, and she dropped off the call. (*Id.*) AstraZeneca points to evidence that when Downing rejoined the call, she stated that she had called Boyle, reviewed the emails, and changed her explanation regarding the emails by explaining that she had contacted Boyle's physician and asked the nurse to hold a BCISE sample for Boyle to pick up. (*Id.*) AstraZeneca determined that "[b]ased on [Boyle's] email, it is clear that she did not have a prescription for Bydureon at the time she was thanking Downing for the free sample and asking her for another free sample of BCISE" and that "[f]ree trial offers can only be used once by a patient. Therefore, [Boyle] could not have used two free trial offers for Bydureon BCISE." *Id.* at

PageID # 851). AstraZeneca also determined that "it does not seem reasonable to believe that a district sales manager could call an endocrinologist office and ask the nurse to give a BCISE sample to one [sic] their own patients" and, in light of Downing's changing explanation, found that "Downing's statements related to the emails are not plausible explanations" and that she was not credible. (*Id.*). As a result of the Compliance investigation, AstraZeneca determined that Downing violated the following company policy:

> You must not knowingly give samples to HCPs for personal use (including for family and friends), or take them for personal use.

(*Id.* at PageID # 853). AstraZeneca also determined that Downing violated the Prescription Drug Sample Manual:

> AstraZeneca samples become the property of the HCP upon delivery and may only be dispensed to a patient under an HCP's supervision.
>
> Once samples are delivered to or accepted by an HCP, they become that HCP's property. You must not remove AstraZeneca or any other company's sample from an HCP's sample closet. For avoidance of doubt, samples must never be taken for personal use.

(*Id.* at PageID # 853). AstraZeneca points to evidence that it determined "[d]ue to the significance of the substantiated allegations and Downing's credibility during the [investigation], the Compliance recommendation was termination with cause.

Downing points to evidence that during a meeting approximately one year before her termination, AstraZeneca's head of sales expressed that the company needed "fresh blood" which Downing understood to mean that "the sales force was too old, too many old people, and we need a younger sales force, we need younger people." (Doc. No. 40-1 at PageID # 539 - 540). Thus, Downing argues that AstraZeneca's proffered reasons are merely pretextual and that her termination was "'pre-ordained' after she merely reported the allegations of ethical violations against Page." (Doc. No. 45 at PageID # 1053).

12

When considering whether Downing has established that AstraZeneca's proffered reasons are pretextual, the Court's "prerogative is not to determine definitively whether [Downing's] testimony during [AstraZeneca's] investigation was credible—rather, the relevant inquiry is whether [AstraZeneca] had an honest belief that it was not." *Kappen v. Ashley Med. Supply, Inc.*, 695 F. App'x 94, 97 (6th Cir. 2017). "If an employer has an 'honest belief' in the nondiscriminatory basis upon which it has made its employment decision (i.e. the adverse action), then the employee will not be able to establish pretext." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530–31 (6th Cir. 2012) (internal citation omitted). "When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Id.* (internal citation omitted).

Here, the Court finds that AstraZeneca has provided evidence showing that Downing was terminated based on its good faith belief that she violated company policies. Accordingly, the Court finds that no genuine issue of material fact exists as to the issue of pretext, and summary judgment will be granted as to Downing's age discrimination claim under the ADEA and THRA.

**B. State Law Claims**

As Downing's federal claims have been dismissed, the only claims remaining are the state law claims, namely, the TPPA and THRA retaliation claims. The Court declines to exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367 ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"); *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011) ("[T]his Court applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed."); *Lyndon's*

*LLC v. City of Detroit, Michigan*, No. 23-1895, 2024 WL 3427176, at *3 (6th Cir. 2024) ("Both federal statutory provisions and our precedent…permit [and] encourage district courts to decline to exercise supplemental jurisdiction over state law claims that are left without an anchor when their associated federal claims are dismissed.") (internal citations omitted).

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE